# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LORIANNE MIHELIC,                                    )
                                                     )
      Plaintiff,                               )
                                                     )
    v.                                           )
                                                     )
WILL COUNTY, ILLINOIS, the                           )
Will County Sheriff PAUL J. KAUPAS,                  )
THE WILL COUNTY                                      )    No. 10 C 4343
SHERIFFS POLICE, Deputy Sheriff                      )
BRETT SCHAEFFER, JOEL                                )    Judge Ruben Castillo
SWANSON, ROBERT AUSTIN,                              )
DANIEL BECK, JOSEPH BOERS,                           )
SCOTT GLOMB, BRIAN HICKEY,                           )
STEVEN HUNTER, CHRISTOPHER                           )
McCLEVERTY, BRIAN O'LEARY,                           )
Will County Forest Preserve Officer                  )
KEVIN SCHUMACHER                                     )
and Crete, Illinois Police Officer                   )
SCOTT PIERITZ,                                       )
                                                     )
      Defendants.                              )

## MEMORANDUM OPINION AND ORDER

Lorianne Mihelic ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), against Will County, Illinois ("County"), Paul J. Kaupas, the Will County Sheriff ("Kaupas"), the Will County Sheriffs Police, Will County Deputy Sheriffs[1] Brett Schaeffer, Joel Swanson, Robert Austin, Daniel Beck, Joseph Boers, Scott Glomb, Brian Hickey, Steven Hunter, Christopher McCleverty, Brian O'Leary, (collectively, "Will County Defendants"), Will County Forest Preserve Officer Kevin Schumacher, and Crete, Illinois Police Officer, Scott Pieritz. (R. 47, Second Am. Compl.) Presently before the Court are the Will County Defendants' motion to

---

[1] The court will refer to the Will County Deputy Sheriffs as the "Deputy Sheriffs."

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (R. 54, Will County Defs.' Mot.), and Pieritz's motion to dismiss pursuant to Rule 12(b)(6).[2] (R. 48, Pieritz's Mot.) For the reasons stated below, both motions to dismiss are granted.

## RELEVANT FACTS

In February 2009, Plaintiff resided at 19321 Oak Street, Mokena, Will County, Illinois (the "Residence"). (R. 47, Second Am. Compl. ¶ 2.) On February 11, 2009, Swanson requested the issuance of a search warrant to search the person of Robert Murray and the Residence. (*Id.* ¶ 14.) That same day, a Will County circuit court issued the warrant authorizing the Deputy Sheriffs, Schumacher, and Pieritz to search the Residence for the purpose of searching the person and residence of Murray. (*Id.* ¶ 15.) Although Murray had spent the evening at the Residence on a few occasions as a guest, he did not live or reside at the Residence. (*Id.* ¶ 16.) On the evening of February 11, 2009, the Deputy Sheriffs, Schumacher, and Pieritz, dressed in uniform, executed the search warrant at the Residence. (*Id.* ¶¶ 16-17.) Murray was at the Residence when the search warrant was executed. (*Id.* ¶ 16.)

Plaintiff alleges that the Deputy Sheriffs, Schumacher, and Pieritz did not present the search warrant before they entered and searched the Residence, nor did they state their names or provide any reason for their actions. (*Id.* ¶ 17.) During the search, the Deputy Sheriffs, Schumacher, and Pieritz repeatedly asked Plaintiff who owned the house and each time Plaintiff responded that she owned the Residence. (*Id.* ¶ 18.) The Deputy Sheriffs pointed loaded weapons at all persons present during the search, including an eight-month-old baby. (*Id.* ¶ 19.) The Deputy Sheriffs, Schumacher, and Pieritz also ordered Plaintiff to lie on the floor in the

---

[2] Schumacher has not filed an answer and has not joined either the Will County Defendants' motion to dismiss or Pieritz's motion to dismiss.

hallway of the Residence and directed the other individuals into the living room. (*Id.* ¶ 20.) The Deputy Sheriffs, Schumacher, and Pieritz handcuffed Plaintiff, pulled her up off the floor by the handcuffs, and then patted her down. (*Id.*) One of the Defendants subsequently unzipped Plaintiff's shirt and left Plaintiff's shirt unzipped for approximately six-and-a-half minutes, even though Plaintiff informed the officer that she was not wearing under-garments before the officer unzipped her shirt. (*Id.*)

According to Plaintiff, the Deputy Sheriffs, Schumacher, and Pieritz took money from her, failed to provide a receipt, and never returned the money. (*Id.* ¶ 22.) Additionally, Plaintiff's entertainment center was destroyed, her television and bed frame were broken, and empty bottles of liquor were smashed. (*Id.* ¶ 25.) The Deputy Sheriffs, Schumacher, and Pieritz emptied personal items from drawers and threw them around Plaintiff's house. (*Id.* ¶ 26.) Prior to departing, the Deputy Sheriffs, Schumacher, and Pieritz told Plaintiff that they would be back in a few months and threatened that Plaintiff would lose her house in future raids. (*Id.* ¶ 27.) Just before leaving the Residence, the Deputy Sheriffs, Schumacher, and Pieritz presented Plaintiff with a copy of the search warrant, which listed Murray as the person they sought to search. (*Id.* ¶ 17.)

At the time of the search, Plaintiff was suffering from Bi-Polar Manic Depression for which she receives Social Security Disability benefits. (*Id.* ¶ 32.) Plaintiff also alleges that as a result of the search, she is currently undergoing psychological treatment. (*Id.* ¶ 39.)

On April 14, 2009, Plaintiff filed a complaint for damages with the Will County Sheriff. (*Id.* ¶ 43, Ex. 1.) On July 1, 2009, the Will County Sheriff denied Plaintiff's complaint. (*Id.* ¶ 44, Ex. 2.) On or about May 1, 2009, Plaintiff met with attorney Richard J. Dvorak to discuss

3

the search that occurred on February 11, 2009. (*Id.* ¶ 52.) At this meeting, Dvorak informed Plaintiff that she might have a claim against Defendants. (*Id.* ¶¶ 54-55.)

## PROCEDURAL HISTORY

Plaintiff filed this action on July 13, 2010. (R. 1, Compl.) In her initial complaint, Plaintiff named the following defendants: Will County, Illinois, the Will County Sheriff, the Will County Sheriffs Police, and John Doe Deputy Sheriffs. (*Id.*) With respect to the John Doe defendants, Plaintiff stated that "[t]he John Doe Defendants are sued in this capacity because their names and rank and star numbers are not known at this time." (*Id.* ¶ 6) Plaintiff's initial complaint was brought pursuant to Section 1983 for the unlawful search of her home on February 11, 2009. (*Id.* ¶ 10.) Plaintiff also alleged state law claims for assault, invasion of privacy, destruction of property, and intentional infliction of emotional distress. (*Id.* ¶¶ 24-25.) Finally, Plaintiff asserted a *Monell* claim against the County and the Will County Sheriff. (*Id.* ¶¶ 26-28.) Specifically, Plaintiff alleged that the County was "negligent in its hiring, disciplining, and overseeing" of the Will County Sheriff and Deputy Sheriffs. (*Id.* ¶ 39.) As to the Will County Sheriff, Plaintiff alleged that he was negligent in training Defendants. (*Id.* ¶ 41.)

On February 22, 2011, Plaintiff filed an amended complaint ("First Amended Complaint"). (R. 22, First Am. Compl.) The First Amended Complaint named the following Defendants: Will County, Illinois, the Will County Sheriff, Paul J. Kaupus, and the Will County Sheriffs Police. (*Id.* ¶¶ 3-6.) The Deputy Sheriffs (Schaeffer, Swanson, Austin, Beck, Boers, Glomb, Hickey, Hunter, McCleverty, and O'Leary) were also named defendants, as were Will County Forest Preserve Officer, Schumacher, and Crete, Illinois Police Officer Pieritz. (*Id.* ¶¶ 7-8.)

On April 12, 2011, Plaintiff's state law claims were dismissed pursuant to motions to dismiss filed by the Will County Defendants and Pieritz. (R. 46, Minute Entry.) On April 29, 2011, Plaintiff filed a Second Amended Complaint. (R. 47, Second Am. Compl.) Plaintiff added an additional factual allegation that she has and is suffering from Bi-Polar Manic Depression and that due to her mental disability she did not know or should be reasonably expected to know that her rights had been violated until she met with Dvorak on or about May 1, 2009. (*Id.* ¶¶ 32, 52-55.) Additionally, as to Plaintiff's *Monell* claim against Kaupus, Plaintiff now alleges that Kaupas failed "to adequately punish and discipline prior instances of misconduct[.]" (*Id.* ¶ 45.)

On May 9, 2011, Pieritz filed a motion to dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6). (R. 48. Pieritz's Mot.) On June 1, 2011, the Will County Defendants filed a motion to dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6). (R. 54, Will County Defs.' Mot.) Pieritz and the Will County Defendants argue that Plaintiff's First and Second Amended Complaints are time-barred. (R. 48, Pieritz's Mot.; R. 54, Will County Defs.' Mot.) As to Plaintiff's *Monell* claims, the Will County Defendants argue that the *Monell* claim against the County should be dismissed because (1) negligent conduct by a government official is not sufficient to support a Section 1983 claim against a County, and (2) while the County is a necessary party to Plaintiff's action, the County is not liable for the Sheriff's Department or its employees. (R. 55, Will County Defs.' Mem. at 8-9). The Will County Defendants also argue that the *Monell* claim against Kaupas should be dismissed because Plaintiff fails to aver a sufficient factual basis for its failure to discipline officers. (*Id.* at 8.)

Finally, the Will County Defendants argue that Plaintiff's claims against Kaupas should be dismissed because he cannot be liable in either an individual or official capacity. (*Id.* at 11-12.)

On September 13, 2011, Piertiz moved to file a supplement to his motion to dismiss, which includes excerpts from Plaintiff's deposition. (R. 62, Piertiz's Supp. Mot.) The Court allowed the motion to be filed and Plaintiff filed a response on October 12, 2011. (R. 65, Min. Entry; R. 69, Pl.'s Resp. to Supp. Mot.)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570, F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp*, 550 U.S. at 570).

A plaintiff's failure to adhere to a statute of limitations is an affirmative defense and therefore generally is not a grounds for dismissal at the complaint stage. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). "The exception occurs where . . . the allegations of the complaint itself set forth everything necessary

to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Id.* (citing *Leavell v. Kieffer,* 189 F.3d 492, 495 (7th Cir.1999)).

Additionally, Rule 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Because the Court resolves this matter on the pleadings, and does not take into account Pieritz's supplement to his motion to dismiss, the Court will treat the motions as motions to dismiss.

## ANALYSIS

Pieritz asserts that Plaintiff first identified him as a defendant in her First Amended Complaint, filed on February 22, 2011, and because the First Amended Complaint was filed "more than two years following the events alleged in her Complaints, Plaintiff's federal law claims are barred by the applicable two-year statute of limitations" in Section 1983 actions. (R. 49, Pieritz's Mem. at 2.) Pieritz further argues that the "First and Second Amended Complaints do not relate back to the filing of the original Complaint under [Rule 15(c)]," (*id.* at 3), that the discovery rule does not apply so as to delay the accrual of Plaintiff's claims, (*id.* at 6-7), and that the doctrine of equitable tolling does not apply so as to permit Plaintiff to sue after the expiration of the statute of limitations. (*Id.* at 7-9).

The Will County Defendants argue that the Deputy Sheriffs must be dismissed because Plaintiff's complaint as to the Deputy Sheriffs is time-barred. (R. 55, Will County Defs.' Mem. at 4.) Specifically, the Will County Defendants argue that Plaintiff's failure to identify the

Deputy Sheriffs within the two-year statute of limitations is fatal to her claims against the Deputy

Sheriffs and that her claims can only be "saved" if she meets Rule 15(c)'s relation back

requirements. (*Id.* at 4.) Additionally, the Will County Defendants argue that Plaintiff does not

allege sufficient facts for the application of the discovery rule to extend the accrual date of her

Section 1983 action. (*Id.* at 5.)

## I. Whether Plaintiff's Section 1983 action against Pieritz and the Deputy Sheriffs is time-barred

Plaintiff brings this action pursuant to Section 1983. While Section 1983 provides a

federal cause of action, courts look to the personal injury laws of the state in which the injury

occurred to determine the length of the statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387

(2007); *see also Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993). Illinois has a two-year

statute of limitations for personal injury claims. 735 Ill. Comp. Statute. 5/13-202 (2008). Thus,

Section 1983 claims arising in Illinois are governed by a two-year statute of limitations. *Kelly*, 4

F.3d at 511. Here, Plaintiff brings an action for an unlawful search and seizure that occurred on

February 11, 2009. (R. 47, Second Am. Compl. ¶ 14.) Plaintiff filed her initial complaint on

July 13, 2010, against the County, the Will County Sheriff, the Will County Sheriffs Police, and

several John Doe Deputy Sheriffs. (R. 1, Compl.) It was not until Plaintiff filed her First

Amended Complaint on February 22, 2011, that Plaintiff first identified the Deputy Sheriffs and

Pieritz by name. (R. 22, First Am. Compl.) The parties do not dispute that the two-year statute

of limitations applies. (R. 48, Pieritz's Mot. at 2; R. 54, Will County Defs.' Mot. at 3; R. 59, Pl's

Response at 2.)

Rather, the core dispute between the parties is when the statute of limitations began to run–the accrual date of Plaintiff's action. "Accrual is the date on which the statute of limitations begins to run." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). While state law sets the length of the statute of limitations period, federal law governs the date of accrual for a Section 1983 action. *Wallace*, 549 U.S. at 388. Under federal law, the statute of limitations begins to run on the date "on which the plaintiff discovers that he has been injured." *Cada*, 920 F.2d at 450.

The Seventh Circuit set forth the analysis to be applied to a question of the statute of limitations and claim accrual in the Section 1983 context in *Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir. 1993) and reaffirmed that standard in *Hileman v. Maze*, 367 F.3d 694 (7th Cir. 2004). "A § 1983 action accrues 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Hileman*, 367 F.3d at 696 (quoting *Kelly*, 4 F.3d at 511). Generally, this is a two-step inquiry. "First, a court must identify the injury. [Second], it must determine the date on which the plaintiff could have sued for that injury. That date should coincide with the date the plaintiff 'knows or should know' that her rights were violated." *Id.*

When a plaintiff brings a Section 1983 action alleging a Fourth Amendment violation, however, the Supreme Court and Seventh Circuit have articulated a clear rule governing the accrual date of an unlawful search or seizure claim. *See Wallace*, 549 U.S. 384 (2007); *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010). In *Wallace*, the plaintiff brought a Section 1983 claim in 2002 for a false arrest in violation of the Fourth Amendment that occurred in 1994. 549 U.S. at 386. The Supreme Court rejected plaintiff's contention that his cause of action accrued when he was released from custody and the State dropped the charges against him. *Id.* at 390. Rather, the

9

Supreme Court held that the plaintiff's Section 1983 claim for false arrest accrued much earlier, when the plaintiff became detained pursuant to legal process. *Id.* Thereafter, the Seventh Circuit interpreted *Wallace* as holding that "a claim asserting that a search or seizure violated the fourth amendment . . . accrues immediately." *Evans*, 603 F.3d at 363 (finding that plaintiff's claim for excessive force accrued immediately) . In short, *Wallace* and *Evans* provide a clear rule that a Section 1983 action for an unlawful search or seizure accrues immediately, at the time of the search or seizure.

Here, Plaintiff alleges that she was subjected to an unlawful search and seizure of her person and an unlawful search of her Residence on February 11, 2009. (R. 47, Second Am. Compl. ¶¶ 16-17, 30.) Defendants argue that Plaintiff's claim accrued on February 11, 2009, when the alleged injury occurred. (R. 49, Pieritz's Mem. at 3; R. 55, Will County Defs.' Mem. at 2.) Because Plaintiff did not name Pieritz and the Deputy Sheriffs until the date she filed her First Amended Complaint, on February 22, 2011, Defendants further argue that her claims as to Pieritz and the Deputy Sheriffs are not timely. (R. 49, Pieritz's Mem. at 2-4; R. 55, Will County Defs.' Mem. at 4.) Plaintiff, on the other hand, argues that her claim accrued on May 1, 2009, when she met with an attorney to discuss the incident. (R. 59, Pl.'s Resp. at 1; R. 47 Second Am. Compl. ¶ 52.) Accordingly, Plaintiff argues that the limitations period did not expire until May 1, 2011, and therefore the identification of Pieritz and the Deputy Sheriffs on February 22, 2011, was timely as it was done within the two-year statute of limitations period. (*Id.* at 1-2). Under *Wallace* and *Evans*, however, Plaintiff's claim for the unlawful search and seizure accrued immediately, and the statute of limitations began to run on February 11, 2009–the date of the unlawful search and seizure. Therefore, Plaintiff should have brought her Section 1983 action

against Pieritz and the Deputy Sheriffs by February 11, 2011–two years after the unlawful search and seizure took place.

## A.    Discovery Rule

Plaintiff next argues that the federal discovery rule applies to her action and that her cause of action did not accrue until May 1, 2009, when she met with an attorney who informed her that her constitutional rights had been violated. (R. 59, Pl.'s Resp. at 3-4.) The "discovery rule" is a rule of federal common law that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured." *Cada*, 920 F.2d at 450. That is, "[t]he discovery rule starts the statute of limitations running only when the plaintiff learns that [he has] been injured, and by whom." *United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010).

This argument is unavailing. First, district courts in this circuit are divided on the issue of whether the federal discovery rule applies to Section 1983 actions alleging Fourth Amendment violations in light of *Wallace*. *Compare Bennett v. Vahl*, No. 09-6639, 2011 WL 2415017, at *4 (N.D. Ill. June 10, 2011) (noting division and comparing cases), *and Johnson v. Guevara*, No. 05-1042, 2007 WL 2608525, at *2 (N.D. Ill. Sept. 5, 2007) (stating that the discovery rule has no applicability to false arrest claims because in cases of false arrest, a plaintiff is aware both of his injury and those responsible for his injury at the time of the arrest, therefore no accrual of the cause of action is necessary), *with Johnson v. Garza*, 564 F. Supp. 2d 845 (N.D. Ill. 2008) (applying discovery rule and finding that false arrest claim did not accrue until plaintiff became aware of misconduct that led to probable cause for plaintiff's arrest).

Second, even assuming that the discovery rule does apply in this context, no delay in the accrual of the cause of action is necessary in this case. The discovery rule dictates that Plaintiff's claim accrued when she had enough information to know that she had been injured and by whom. In her complaint, Plaintiff alleges that she was home and present during the course of the search, that she was able to observe what Defendants did during the course of the search, and most importantly, that Defendants presented her with a copy of the search warrant at the conclusion of the search that specified that Murray, "a person who did not and does not live at the address for which the warrant was served," was the person to be searched. (R. 47, Second Am. Compl. ¶¶ 16-28.) These allegations demonstrate that Plaintiff knew the search was wrong on February 11, 2009, as the "four corners" of the search warrant sought to search Murray, a person who did not live at the Residence. This information was sufficient to put Plaintiff on notice of her injury–the unlawful search–and to make her aware of those responsible for that injury–the officers who searched the Residence. *See Bennet*, 2011 WL 2415017, at *4 (even if discovery rule applied, plaintiff's claim accrued when he had enough knowledge to argue to criminal court that his search and seizure were unconstitutional); *Thomas v. City of Chi.*, No. 07-4969, 2009 WL 1444439, at *2-3 (N.D. Ill. May 21, 2009) (even if discovery rule applied, plaintiff could have initiated his Section 1983 action at the moment he was arrested because a person who gets arrested has knowledge that would lead a reasonable person to investigate the possibility that his legal rights had been infringed). There is also no support for Plaintiff's claim

that her ignorance of the law should serve as a basis for applying the discovery rule.[3] *See United States v. Kubrick*, 444 U.S. 111, 122 (1979) ("We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment.")

## B.    Equitable Tolling

This does not end the matter, however, because Plaintiff alternatively argues that if her claim expired on February 11, 2011, the statute of limitations should be equitably tolled. (R. 59, Pl.'s Resp. at 3.) The doctrine of equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Counsel of the City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001); *Cada*, 930 F.2d at 451. In other words, under the principle of equitable tolling, a plaintiff who fails to sue within the limitations period, "can get an extension of time within which to sue if it would have been unreasonable to expect [her] to sue earlier." *Shropshear*, 275 F.3d at 595. A litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Although the accrual analysis is governed by federal law, in Section 1983 actions courts apply the tolling laws of the state where the injury occurred. *Shropshear*, 275 F.3d at 596. Under Illinois law, "[e]quitable tolling of a statute of limitations may be appropriate if the

---

[3] Plaintiff's attempt to misappropriate Illinois's lenient discovery rule for Franchise Act claims to her Section 1983 case by citing *Pyramid Controls Inc. v. Siemens Indus. Automation, Inc.,* 172 F.3d 516 (7th Cir.1999), is unavailing. (R. 59, Pl.'s Resp. at 3.) Plaintiff is not bringing a suit pursuant to the Illinois Franchise Act, and there is no support for Plaintiff's argument that a lenient version of the discovery rule applies to Plaintiff's Section 1983 claim so as to delay the accrual of her claim.

defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted her or her rights in the wrong forum." *Clay v. Kuhl,* 727 N.E.2d 217, 223 (Ill. 2000) (citing *Ciers v. O.L. Schmidt Barge Lines, Inc.*, 675 N.E.2d 210 (Ill. App. Ct. 1996)). "Where the plaintiff cannot reasonably be expected to sue in time because of disability, irremediable lack of information, or other circumstances beyond his control, the statute of limitations will be tolled until he is able through the exercise of proper diligence to file his suit." *Griffin v. Willoughby*, 867 N.E.2d 1007, 1016 (Ill. App. Ct. 2006) (citing *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)). For example, where a plaintiff alleges that he is suffering from a legal disability, such that she is "entirely without understanding or capacity to make or communicate decisions regarding [her] person and totally unable to manage . . . [her] estate or financial affairs[,]" Illinois courts will toll the statute of limitations. *In re Doe*, 703 N.E.2d 413, 414 (Ill. App. Ct. 1998). But, where a person "can comprehend the nature of the injury and its implications[,]" Illinois courts have found that tolling of the statute of limitations is not appropriate. *Id.* (concluding that plaintiff, who suffered, in part, from post-traumatic stress disorder, autism, attention-deficit hyperactivity disorder, and who required the appointment of a guardian, was not disabled for purposes of tolling the statute of limitations). Equitable tolling may also postpone "the deadline for suing if a plaintiff cannot discovery his injurer's identity within the statutory period despite the exercise of reasonable diligence. *Griffin*, 867 N.E.2d at 1016 (citing *Fidelity Nat'l Title Ins. Co. of New York v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006)). "Once extraordinary circumstances weighing in favor of equitable tolling are identified, they must be balanced against

any prejudice that the delay might cause the defendants." *Savory v. Lyons*, 469 F.3d 667, 673-74 (7th Cir. 2006).

Plaintiff argues that due to the complexity of Section 1983 actions she did not realize that a constitutional violation had taken place until she met with an attorney on or about May 1, 2009. (R. 59, Pl.'s Resp. at 3.) Additionally, Plaintiff asserts that her allegations relating to her Bipolar Manic Depression are one factor that should be considered "when considering whether or not her seeking counsel was necessary before she could know whether or not her constitutional rights had been violated." (*Id.* at 4.) Pieritz, on the other hand, argues that Plaintiff's claim should not be equitably tolled because "the facts concerning Plaintiff's mental condition do not rise to the level of being incompetent to handle her affairs." (*Id.* at 8-9.)

In short, Plaintiff appears to argue that her mental illness constitutes extraordinary circumstances. Under Illinois law, however, simply having a disability is not enough to toll the statute of limitations. *In re Doe*, 703 N.E.2d at 414 (noting that where a person "can comprehend the nature of the injury and its implications" the person is not legally disabled). Rather, a plaintiff must allege that she was "entirely without understanding or capacity to make or communicate decisions regarding [her] person and totally unable to manage [her] estate or financial affairs." *Id.*; *Hall-Moten v. Smith*, No. 05-5510, 2009 WL 1033361, at *6-7 (N.D. Ill. Apr. 17, 2009) (discussing tolling of the statute of limitations for personal injury claims); *see also Miller*, 77 F.3d at 191 ("mental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing [her] affairs and thus from understanding [her] legal rights and acting upon them."). Here, Plaintiff has not alleged any facts suggesting that she was entirely without capacity to make or communicate decisions or unable to manage her affairs as a

result of her mental illness. In fact, Plaintiff's arguments about the effect her mental illness may have had on her ability to understand her rights is undercut by the fact that she filed a complaint with the Sheriff's Department in April 2009, before she allegedly met with an attorney. *See Barnhart v. United States*, 884 F.2d 295, 299 (1989) (noting that "[t]he more general allegations about the impact of the disease on [plaintiff's] ability to bring any kind of legal action are somewhat undercut by the fact" that plaintiff had brought an earlier suit within the necessary period of time against a separate potential defendant). Additionally, Plaintiff retained counsel and filed a Section 1983 suit outlining her claims against the John Doe defendants well before the statute of limitations on her claims expired. On these allegations, the Court cannot find that Plaintiff's mental illness constitutes an extraordinary circumstance warranting equitable tolling. Therefore, Plaintiff's claims as to Pieritz and the Deputy Sheriffs are not subject to equitable tolling.

## II.     Relation Back

The Court next considers whether Plaintiff's First and Second Amended Complaints are timely because they relate back to the date of filing of her original complaint under Rule 15(c). Pieritz and the Will County Defendants argue that because Plaintiff amended her complaint to identify Pieritz and the Deputy Sheriffs only after the statute of limitations expired, Plaintiff's First and Second Amended Complaints are only saved if they relate back to the filing of the original complaint on July 13, 2010. (R. 49, Pieritz's Mem. at 4; R. 55, Will County Defs.' Mem. at 4.) Although Plaintiff did not address Defendants' relation back arguments in her response, the Court will address Defendants' arguments on the merits.

16

Rule 15(c) allows amendment to a pleading that would otherwise be time-barred when the amendment relates back to the date of the original pleading. Fed. R. Civ. P. 15(c)(1). An amendment that seeks to add or change parties relates back when it "asserts a claim or defense that arose out of the same conduct, transaction, or occurrence set out . . . in the original pleading[,]" and "when the party to be brought in by amendment received such notice of the action [such] that it will not be prejudiced in defending on the merits[,] and knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added).

Establishing the existence of a mistake is a threshold requirement in a 15(c)(1) inquiry and is independent of the determination of whether the party to be brought in knew the "action would be brought against him." *King v. One Unknown Fed. Correctional Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (citing *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998); *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980)). "Thus, in the absence of a mistake in the identification of the proper party, it is irrelevant for the purposes of [Rule 15(c)(1)] whether or not the purported substitute party knew or should have known that the action would have been brought against him." *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993) (quoting *Wood*, 618 F.2d at 1229-30). As relevant here, the Seventh Circuit has consistently held that relation back under Rule 15(c)(1) is not appropriate in circumstances where the plaintiff has failed to identify the proper party. *See Jackson v. Kotter*, 541 F.3d 688, 699 (7th Cir. 2008) (affirming, in part, district court's order finding that plaintiff's complaint did not relate back where plaintiff "simply failed to identify the proper defendant, as opposed to mistaking the type of defendant . . . or mistaking, misspelling, or otherwise confusing, the defendant's name."); *King*, 201 F.3d at

914 (finding that plaintiff had not satisfied the mistake requirement of Rule 15(c)(3) because he had not mistakenly sued the wrong party, rather he had "a simple lack of knowledge of the identity of the proper party") (quoting *Baskin*, 138 F.3d at 704-05); *Worthington*, 8 F.3d at 1257 ("Because [plaintiff's] failure to name [defendants] was due to a lack of knowledge as to their identity, and not a mistake in their names, [plaintiff] was prevented from availing himself of the relation back doctrine of Rule 15(c).").

Here, Plaintiff proffers no argument to suggest that she made a mistake in identifying Pieritz and the Deputy Sheriffs. Rather, when plaintiff brought her initial complaint against the John Doe defendants, she clearly stated that they were sued as John Doe defendants "because their names and rank and star numbers are not known at this time." (*Id.*) Because lack of knowledge is not a mistake, the Court finds that Plaintiff's First and Second Amended Complaints do not relate back to the initial complaint. *See Demouchette v. Sheriff of Cook Cnty.*, No. 09-6016, 2011 WL 1378712, at *2 (N.D. Ill. Apr. 12, 2011) (granting certain defendants' motion to dismiss where plaintiff's original complaint included John Doe defendants, but amended complaint naming the John Doe defendants was not filed until after Section 1983 two-year statute of limitations had expired). Accordingly, the claims against Pieritz and the Deputy Sheriffs are dismissed.

### III. *Monell* Claims against County

The Will County Defendants next argue that the *Monell* claim against the County should be dismissed because (1) negligent conduct by a government official is not sufficient to support a Section 1983 claim against a County, and (2) while the County is a necessary party to Plaintiff's action, the County is not liable for the Sheriff's Department or its employees. (*Id.* at 8-9).

Here, Plaintiff alleges that the County "was negligent in its direction, organizing and overseeing [of] The Will County Sheriff's Office, and consequently the other PARTY DEFENDANTS involved in the actions described above[,] by way of it's [sic] law making functions and responsibilities." (*Id.* ¶ 40.) First, "[a]lthough a municipality [or other local governmental entity] is subject to suit under § 1983, *respondeat superior* liability will not suffice to impose § 1983 liability." *Baskin*, 138 F.3d at 704; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents."). Rather, a plaintiff must show that the local governmental entity's policy or custom, caused the constitutional violation. *Monell*, 436 U.S. at 694. Plaintiff has failed to allege such facts.

Second, the Seventh Circuit has found that Illinois sheriffs are agents of the county sheriff's department, an independently elected office that is not subject to a county's control. *See Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998) (discussing *Ryan v. Cnty. of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995), where the Seventh Circuit affirmed dismissal of county defendant in Section 1983 suit against DuPage County Sheriff that attempted to impose municipal liability against County of DuPage.) Therefore, because sheriffs are not subject to a county's control, liability cannot be imputed to the County based on the Will County Sheriff's actions. *See Potochney v. Doe*, No. 02-1484, 2002 WL 31628214, at *2 (N.D. Ill. Nov. 21, 2002) (dismissing claims against county where Plaintiff alleged that county had a policy of failing to train deputy sheriffs). While the County is a necessary party to the litigation because Illinois state law requires the County to pay damages in suits against a sheriff's department, *Carver v. Sheriff of LaSalle Cnty., Ill.*, 324 F.3d 947, 948 (7th Cir. 2003), Plaintiff has failed to

allege any facts establishing that the County is vicariously liable for the actions of the Will County Sheriff. Accordingly, Plaintiff's claims against the County are dismissed.

## IV. Claims against Kaupas

With respect to Plaintiff's claims against Kaupas, Plaintiff alleges that he is sued individually and in his official capacity. (R. 47, Second Am. Compl. ¶ 11.) Plaintiff further alleges that Kaupas was "negligent, responsible and liable" for the unlawful search and seizure that took place. (*Id.* ¶ 41.) Plaintiff also alleges that Kaupas facilitated the type of constitutional violation alleged here, as a matter of policy and practice, "by failing to adequately punish and discipline prior instances of misconduct" by repeat offenders, and by failing to refer deputies for prosecution when they commit crimes. (*Id.* ¶¶ 45, 47.)

Regarding Plaintiff's claims against Kaupas in his individual capacity, "it is well established that negligent conduct by a government official is insufficient to support a claim under § 1983." *Harrell v. Cook*, 169 F.3d 428 (7th Cir. 1999). Instead, to establish personal liability in a Section 1983 action, "a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir. 1994). Here, Plaintiff has not alleged that Kaupas was personally involved in the search of her Residence, that he had knowledge of the manner in which the search was conducted, or that he caused the constitutional violation. Because Plaintiff has failed to allege that Kaupas was personally involved in the search of the Residence, Plaintiff's claim against Kaupas in an individual capacity is dismissed.

With respect to Plaintiff's official capacity claims against Kaupas, "[a] suit against a governmental officer in his official capacity is really a suit against the entity of which the officer

is an agent." *Franklin*, 150 F.3d at 684 n.1 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Monell*, 436 U.S. at 690 n.55). In other words, a suit against a sheriff in his official capacity is a suit against the sheriff's department itself. *Franklin*, 150 F.3d at 684-86. Although neither party has raised the issue, the Court notes that governmental liability cannot attach where there is no finding that the individual officers are liable on the underlying substantive claims. *See Durkin v. City of Chi.*, 341 F.3d 606, 615 (7th Cir. 2003) (citing *City of L.A. v. Heller*, 475 U.S. 796 (1986)). Where an individual has not suffered a constitutional deprivation at the hands of an individual officer, the fact that departmental policies might have authorized the officers' actions is besides the point. *See Heller*, 475 U.S. at 799. Here, because the Court has dismissed the underlying claims against the individual officers, there is no underlying constitutional violation. Accordingly, Plaintiff's claims against Kaupas in his official capacity and against the Will County Sheriffs Police are dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Pieritz's motion (R. 48) is GRANTED and the Will County Defendants' motion (R. 54) is GRANTED. The end result of this litigation is unfortunate in light of the serious allegations of misconduct asserted by Plaintiff. However, once this complaint was filed there was no reason Plaintiff's attorney could not have aggressively pursued discovery to timely file a proper complaint. The Clerk of the Court is directed to enter judgment in favor of all Defendants and against Plaintiff.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** November 28, 2011